IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDOULAYE BARRY, | : | No. 3:25cv408 |
| Petitioner | : | (Judge Munley) |
| v. | : | |
| WARDEN J. GREENE, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Abdoulaye Barry ("Barry") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Barry asserts that the Federal Bureau of Prisons ("BOP") failed to credit him First Step Act ("FSA") time credits from the date he was sentenced until approximately one month after the date he arrived at his designated facility to serve his sentence. (Id.; Doc. 1-1). The petition is ripe for disposition and, for the reasons set forth below, the court will deny the habeas petition.

I. **Background**

On February 10, 2023, following a jury trial in the United States District Court for the Northern District of Georgia, Barry was found guilty of access device fraud, conspiracy to commit access device fraud, and aggravated identity theft. See United States v. Barry, No. 1:21-cr-385 (N.D. Ga.), Doc. 194. On

June 21, 2023, Barry was sentenced to a 69-month term of imprisonment. See id., Doc. 234.

On October 16, 2023, Barry arrived at the Low Security Correctional Institution, Allenwood ("LSCI-Allenwood"). (Doc. 7-2, Declaration of Unit Manager Chris Coombe ("Coombe Decl."), ¶ 11). His current projected release date is May 31, 2027, via FSA time credits. (Doc. 7-3, Public Information Inmate Data).

II.   **Discussion**

   A.   The First Step Act

Under the FSA, Congress charged the Attorney General with creating a Risk and Needs Assessment System (the "System") within 210 days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System would be used for: (1) determining an inmate's recidivism risk as part of the intake process; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically reassessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; (7) determining when the inmate is ready to transfer to pre-release custody or

supervised release; and (8) determining appropriate use of technology for those with dyslexia. See id. § 3632(a)(1)-(8). Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." Kurti v. White, No. 1:19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). An inmate may initially earn 10 days of credit for every thirty 30 days of successful participation. See id. Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every 30 days of successful participation. See id.

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FSA time credits. See id. § 3632(d)(4)(D)-(E). In addition, an inmate cannot earn FSA time credits for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." Id. § 3632(d)(4)(B). According to 18

3

U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Id. § 3585(a).

The BOP has issued regulations providing that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). An inmate must also be "successfully participating" in designated programming to earn FSA time credits. Id. § 523.41(c)(1). "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." Id. § 523.41(c)(2). Additionally, in order to be considered to be successfully completing recidivism reduction programs sufficient to earn or apply credits under the FSA, a prisoner may not "opt out" of participating in the programs provided by the BOP. See id. § 523.41(c)(2)-(4). An inmate who "opts out" of a recommended recidivism reduction program is "exclu[ded] from further benefits or privileges allowable under the FSA, until the date the inmate 'opts in' (chooses to participate in the

4

EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff)." Id. § 523.41(c)(5)(iii).

B.  Analysis

As of April 1, 2025, Barry has earned 215 days of FSA time credits towards release and zero credits towards RRC or halfway house placement. (Doc. 7-2, Coombe Decl., ¶ 12; Doc. 7-6, FSA Time Credit Assessment).

Respondent argues that the court must deny Barry's habeas petition because the BOP properly calculated and applied his FSA time credits. (Doc. 7 at 3-15). Respondent asserts that Barry did not start earning FSA time credits on June 21, 2023, his date of sentencing, and that Barry "does not begin earning FSA [time credits] until he has completed the required needs assessments that will dictate the EBRR programming or productive activities that will appropriately address his needs so he can successfully participate in designated programming." (Id. at 9) (citing 28 C.F.R. § 523.41(c)(1)). Respondent notes that "Congress did not specifically, unambiguously define when an inmate begins earning FSA time credits." (Id. at 7). Therefore, "the BOP promulgated regulations that provide guidance for determining applicable dates," and several of those "provisions dictate factors that can delay or preempt an inmate's FSA

5

time credit earning after his initial eligibility date." (Id. at 7-8 (citing 28 C.F.R. § 523.41(c)(4))).

Respondent indicates that these regulations provide that: (1) an "eligible inmate begins earning FSA [time credits] after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)," (see id. at 8 (quoting 28 C.F.R. § 523.42(a))); (2) "an inmate may be preempted from earning FSA [time credits] if he is designated outside the institution," (id. (citing 28 C.F.R. § 523.41(c)(4)(ii))); and (3) "to 'successfully complete' EBRR programming or productive activities, an inmate must necessarily complete the prerequisite assessments which identify the needs to be addressed" (id. (citing 28 C.F.R. §§ 523.40(b), 523.41(c)(2))). Due to these BOP regulations, respondent contends that Barry did not begin earning eligible participation days towards his FSA time credits on June 21, 2023, his date of sentencing, because he "was held at a non-BOP in-transit facility and did not arrive at his designated institution, LSCI Allenwood, until October 16, 2023." (Id. at 9). Respondent also points out that, according to Barry's FSA Time Credit Assessment, he was in opt-out status from October 16, 2023 to November 17, 2023—approximately 32 days—because he failed to complete the Anger/Hostility, Antisocial Peers, Cognitions, and Family/Parenting criminogenic needs assessments. (Id. at 10) (citing Coombe

6

Decl. ¶ 12). The FSA Time Credit Assessment notes that Barry "Refused needs assessment(s)." (Doc. 7-6). As stated, inmates eligible to earn FSA time credits are not "successfully participating" in programming if they opt-out. 28 C.F.R. 523.41(c)(4). Thus, respondent argues that for the 32 days Barry was in opt-out status, any credits he could have earned were properly disallowed. (Doc. 7 at 10; Doc. 7-2, Coombe Decl. ¶ 13). Respondent notes that once Barry completed the required risk and needs assessment, he began to earn 10 FSA time credits for every 30-day period of participation days. (Doc. 7 at 10; Doc. 7-2, Coombe Decl. ¶ 12). Then, after having two consecutive low scores, Barry began earning 15 FSA time credits for every 30 days of programming, which continues if he maintains his low score. (Doc. 7 at 10).

    Barry appears to assert that under the FSA, prisoners should begin earning credits from the time they were sentenced, even if they have not yet arrived at their designated facility. (Doc. 1 at 7; Doc. 1-1 at 2-3); see 28 C.F.R. § 523.42(a). While Barry requests that the BOP recalculate his release date to include FSA time credits from the time that he was sentenced until he arrived at his designated facility, he has not shown that he participated in any programming during that period of time. (See Doc. 1; Doc. 1-1). Courts have differed on whether the BOP's regulations pertaining to when federal inmates can begin earning FSA time credits are controlling. See Heath v. Knight, No. 22-7270,

2024 WL 5198863, at *5 (D.N.J. Dec. 23, 2024) (noting that pursuant to the United States Supreme Court's decision in Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024), courts are no longer required to defer to agency determinations of ambiguous statutory text; explaining that Congress unambiguously defined when an inmate's sentence commences by enacting Section 3585(a) and thus, when an inmate can start earning FSA time credits; and concluding that the "BOP's interpretation in 28 C.F.R. § 523.42(a) [that] a prisoner may begin earning FSA time credits on the date the prisoner arrives at the designated BOP facility where [they] will serve [their] sentence…conflicts with the plain meaning of the statute"); cf. Stinson v. Martinez, No. 2:23-cv-0751, 2024 WL 4969169, at *7 (W.D. La. Nov. 12, 2024) (concluding that "the FSA does not provide that prisoners must begin receiving credit upon the commencement of a sentence"), report and recommendation adopted, 2024 WL 4965618 (W.D. La. Dec. 3, 2024).

Regardless of whether the BOP's regulations conflict with the FSA, Barry has not even established that he is entitled to an award of FSA time credits beginning on June 21, 2023, his date of sentencing. To be entitled to FSA time credits, the FSA plainly states that prisoners may earn credits for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). Barry has not shown that he

participated at all in any such programs or activities from the time he was sentenced until he arrived at his designated facility.[1] (See Doc. 1; Doc. 1-1). Therefore, Barry could not have earned any credit during that period under the language of the statute. Further, after Barry arrived at his designated facility, he was in opt-out status until November 17, 2023, due to his failure to complete the risk and needs assessment. He was not eligible to accrue FSA credits until he completed the required risk and needs assessment. 28 C.F.R. § 523.41(c)(5)(iii). Only then did he begin to accrue credits. Consequently, Barry is not entitled to habeas relief.

### III. Conclusion

Consistent with the foregoing, the court will deny the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). An appropriate order shall issue.

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**

Dated:    May 21, 2025

---

[1] The FSA requires that each prisoner be assessed to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate" to that specific prisoner. 18 U.S.C. § 3632(a). At that point, the BOP can assign specific programming to the prisoner. See id. A prisoner is not immediately assessed at the time of sentencing.

9